United States District Court
District of Minnesota
Civil No. 19-2960(DSD/ECW)

Dr. Patricia T. Rose,

    Plaintiff,

v.                                                    ORDER

Redwood Financial, Inc.,

    Defendant.

    Douglas L. Elsass, Esq., Benjamin C. Johnson, Esq. and Nilan Johnson Lewis, PA, 120 South 6th Street, Suite 400, Minneapolis, MN 55402, counsel for plaintiff.

    Thomas Slattery, Esq. and Jones Walker LLP, 201 St. Charles Avenue, 50th Floor, New Orleans, LA 70170; Barry M. Landy, Esq. and Ciresi Conlin, LLP, 225 South 6th Street, Suite 4600, Minneapolis, MN 55402, counsel for defendant.

This matter is before the court upon the motion to dismiss by defendant Redwood Financial, Inc. Based on a review of the file, record, and proceedings herein, and for the following reasons, the motion is granted in part and the case is remanded to Hennepin County District Court.

**BACKGROUND**

This securities dispute arises from plaintiff Dr. Patricia T. Rose's sale of stock to Redwood. Redwood is a Minnesota corporation that wholly owns HomeTown Bank. Compl. ¶¶ 1, 9. Hometown Bank is Redwood's primary asset. Id. ¶¶ 9, 15. Rose

owned at least 19,659 shares of Redwood stock.[1]  Id. ¶ 4.  On September 24, 2018, Rose sold all of her shares back to Redwood at a price of $55 per share.[2]  Id. ¶ 4.  In the stock purchase agreement governing the sale, Rose acknowledged that she was a "sophisticated investor" knowledgeable about the "financial conditions and results of [Redwood's] operations" and "familiar with the industry in which [Redwood] operates."  Breckinridge Decl. Ex. 4 § 4(g).  Rose apparently undertook some due diligence in determining the price she offered to Redwood for the shares and represented that no additional disclosures were "needed ... to evaluate the sale."  Id.  Redwood denied knowing of any material misstatements or omissions in the disclosures Rose relied on in finalizing the sale.  Id. § 5(d).

In January 2019, Rose learned that Redwood's stock price had "jumped precipitously and unexpectedly" to approximately $92 per share.  Compl. ¶ 6.  Rose does not allege exactly when between September 2018 and January 2019 that occurred.  Throughout 2019,

---

[1] Rose was married to Redwood chairman James Tersteeg, and Redwood issued new share certificates to Rose when they divorced. Id. ¶ 18.  There is some confusion as to how many shares Rose owned before she received the reissued certificates.  Id.  The court need not resolve that issue in ruling on the instant motion, however.

[2] Rose initiated the sale in July 2018, requesting $54 per share, but later increased her request to $55 per share, which Redwood accepted.  Breckinridge Decl. Ex. 4 at 1; id. § 4(h).

2

Redwood's share price averaged $95. Id.

Rose's attorney inquired with Redwood as to the share price increase, and specifically asked whether Redwood had withheld material information before the stock sale. Id. ¶ 7. Redwood's counsel denied knowing of any undisclosed fact that may have caused Redwood's share value to increase after the sale and speculated that the increase was due to unanticipated market transactions and possible market manipulation. Id. ¶ 8. He also acknowledged, however, that the increase was "atypical" for the banking industry during that time of year. Id.

Rose continued to investigate the matter and, in February 2019, discovered that HomeTown Bank had been in the process of converting from a national bank to a state charter bank at the time of the sale. Id. ¶¶ 9, 13. HomeTown approved the conversion in June 2018, filed the necessary paperwork with the Minnesota Department of Commerce in July, and applied for a waiver of publication of the conversion in August. Id. According to Rose, the Department of Commerce has confirmed that the waiver request was unusual and that, although it was granted, "the obligation to publish the conversion is both a state and federal requirement." Id. ¶ 9 n.1. The Department of Commerce approved the conversion on September 6, 2018, nearly three weeks before the stock sale. Id. ¶ 10. Redwood did not publicly disclose the conversion until

3

November 1, 2018, after the stock sale.  Id. ¶ 11.

Rose alleges that Redwood had an obligation to provide notice of the planned conversion and that its failure to do so constituted a material misrepresentation by omission.  Id. ¶¶ 12, 15.  She supports her allegation by asserting that banks routinely disclose conversions from a federal bank to a state charter bank in public filings.  Id. ¶ 14.  She also asserts that the conversion was especially material here because HomeTown is Redwood's primary asset.  Id. ¶ 15.  She alleges that she would not have entered into the stock purchase agreement had she known about the conversion.  Id. ¶ 16.

Rose commenced this action in Hennepin County District Court on November 2, 2019, and Redwood timely removed.  Rose alleges that Redwood engaged in fraudulent misrepresentation and violated Section 10(b) of the Securities Exchange Act of 1934, Rule 10b-5 promulgated thereunder, and Minn. Stat. § 80A.68.  Rose also asserts a claim for declaratory judgment.  Redwood now moves to dismiss.

## DISCUSSION

### I. Standard of Review

To survive a motion to dismiss for failure to state a claim, "'a complaint must contain sufficient factual matter, accepted as

4

true, to state a claim to relief that is plausible on its face.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level. Twombly, 550 U.S. at 555. "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action" are not sufficient to state a claim. Iqbal, 556 U.S. at 678 (citation and internal quotation marks omitted).

In § 10(b) and Rule 10b-5 actions, the Private Securities Litigation Reform Act (PSLRA) requires the complaint to identify the allegedly false statements or omissions of material fact and explain why they were misleading. 15 U.S.C. § 78u-4(b)(1). Moreover, a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." Id. § 78u-4(b)(2).

The court does not consider matters outside the pleadings under Rule 12(b)(6). Fed. R. Civ. P. 12(d). The court may, however, consider matters of public record and materials that are

"necessarily embraced by the pleadings." Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (citation and internal quotation marks omitted). Here, the court considers the stock purchase agreement.[3]

## II. Federal Securities Fraud

Rose alleges that Redwood violated federal securities law by failing to disclose that it was converting from a national bank to a state charter bank at the time of the sale. Section 10(b) of the Exchange Act prohibits the use of "any manipulative or deceptive device or contrivance" in violation of the SEC's rules and regulations "in connection with the purchase or sale of any security." 15 U.S.C. § 78j(b). Rule 10b–5 makes it unlawful "for any person ... to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b–5.

To state a claim under § 10(b) and Rule 10b–5, a plaintiff must allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a

---

[3] Redwood submitted several other exhibits, but now agrees that the court should not consider them in the context of this motion.

security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc., 552 U.S. 148, 157 (2008). The heightened pleading standard mandated by the PSLRA serves to "restrain securities fraud litigation abuses such as the practice of pleading by hindsight." In re K-tel Int'l, Inc., Sec. Litig., 300 F.3d 881, 889 (8th Cir. 2002). As a result, on a motion to dismiss the court does not accept all allegations to be true, but rather disregards "catch-all or blanket assertions that do not live up to the [PSLRA's] particularity requirements." Fla. State Bd. of Admin. v. Green Tree Fin. Corp., 270 F.3d 645, 660 (8th Cir. 2001) (internal quotations omitted).

Redwood argues that the complaint does not adequately allege any material misrepresentations or omissions, facts giving rise to a strong inference of scienter, or loss causation. The court will turn directly to the dispositive issue, scienter.

The PSLRA requires a plaintiff to allege facts giving rise to a strong inference of scienter. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 314 (2007). Merely plausible or reasonable inferences do not support a strong inference. Id. Although the court typically views all facts in a light most favorable to a plaintiff, securities fraud allegations will not

7

survive a Rule 12(b)(6) motion to dismiss unless the allegations set forth in the complaint "collectively add up to a strong inference of the required state of mind." Fla. State Bd., 270 F.3d at 660. "Inferences of scienter do not survive if they are merely reasonable," they must be "both reasonable and 'strong.'" Id. (internal citation omitted).

An inference is strong only if a reasonable person would find it "cogent and at least as compelling as any opposing inference of nonfraudulent intent." Tellabs, 551 U.S. at 314. A court's inquiry is "whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." Id. at 323 (emphasis in original); see also In re Ceridian Corp. Sec. Litig., 542 F.3d 240, 244 (8th Cir. 2008); Elam v. Neidorff, 544 F.3d 921, 928 (8th Cir. 2008).

Scienter "requires a showing of reckless or intentional wrongdoing" that can be established "(1) from facts demonstrating a mental state embracing an intent to deceive, manipulate or defraud, (2) from conduct which rises to the level of severe recklessness, or (3) from allegations of motive and opportunity." Elam, 544 F.3d at 928 (quotations and citation omitted). Factual allegations indicating "that defendants made [or failed to make] statements

8

when they knew or had access to information suggesting these public statements to be materially inaccurate" create a strong inference of scienter. In re Navarre Corp. Sec. Litig., 299 F.3d 735, 746 (8th Cir. 2002). Severe recklessness is shown through "highly unreasonable omissions or misrepresentations involving an extreme departure from the standards of ordinary care, and presenting a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." K-tel, 300 F.3d at 893 (quotation and citations omitted). "[T]he facts giving rise to motive and opportunity may also support a reason to believe the defendant's misrepresentation was knowing or reckless." Id. at 894 (quotation and citation omitted). Motive is shown through "concrete and personal benefit to the individual defendants resulting from the fraud." Id. (quotation and citation omitted).

Rose simply has not met the high bar required to establish scienter. Although Rose has stated a motive for Redwood's omission by alleging that Redwood withheld news of the conversion in order to secure a lower price for Rose's shares,[4] the general desire for financial gain is insufficient to establish a strong inference of scienter. See id. at 895 ("[G]eneral allegations of a desire to

---

[4] The court reserves the issue of whether the conversion was material for the state court.

increase stock prices, increase officer compensation or maintain continued employment are too generalized and are insufficient [to establish scienter]."). The other facts alleged in the complaint likewise fail to support a strong inference of scienter.

According to the complaint, HomeTown approved the conversion in June 2018, filed the necessary paperwork with the Minnesota Department of Commerce in July, and applied for a waiver of publication of the conversion in August – all months or weeks before the stock sale. Compl. ¶ 9. Notably, it appears that Redwood did not disclose the planned conversion to shareholders during the conversion process, which preceded Rose initiating the sale. This fact weakens any inference that Redwood was specifically motivated to defraud Rose by not disclosing the conversion. The inference of scienter is further contradicted by the fact that Rose, not Redwood, initiated the stock sale in July, which negates the possibility that Redwood orchestrated the sale in order to divest Rose of her shares before the conversion could occur. Further, the court is not persuaded by Rose's argument that Redwood's fraudulent intent is evinced by its request to waive publication of the conversion. Even crediting the allegation that such waivers are unusual, there is a mechanism for such a waiver and the Department of Commerce saw fit to grant one in this case.

10

Thus, the fact of the waiver does not support a finding of scienter.

Under these circumstances, the court concludes that Rose has not sufficiently pleaded scienter and that, as a result, her federal securities claim fails as a matter of law.[5]

**III. State-Law Claims**

Because the court has dismissed Rose's sole federal claim, the only claim for which original jurisdiction existed, the court must consider whether to exercise supplemental jurisdiction over the remaining state-law claims. See 28 U.S.C. § 1367(c)(3); Johnson v. City of Shorewood, Minn., 360 F.3d 810, 819 (8th Cir. 2004). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine - judicial economy, convenience, fairness, and comity - will point toward declining to exercise jurisdiction over the remaining state-law claims." Dodson v. Univ. of Ark. for Med. Scis., 601 F.3d 750, 756 (8th Cir. 2010) (per curiam) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)); see also Kapaun v. Dziedzic, 674 F.2d 737, 739 (8th Cir. 1982) ("The normal practice where federal claims are dismissed

---

[5] The court will not address the remaining elements of the federal securities claim because those elements overlap with Rose's state-law claims.

11

prior to trial is to dismiss pendent claims without prejudice, thus leaving plaintiffs free to pursue their state-law claims in the state courts.").

Based on consideration of the pendent jurisdiction factors, the court will not exercise its discretion to take supplemental jurisdiction over the state-law claims. This case was initially commenced in state court, and the remaining claims depend solely on determinations of state law. See Farris v. Exotic Rubber & Plastics of Minn., Inc., 165 F. Supp. 2d 916, 919 (D. Minn. 2001) ("State courts, not federal courts, should be the final arbiters of state law.") (quoting Baggett v. First Nat'l Bank of Gainesville, 117 F.3d 1342, 1353 (11th Cir. 1997)). Further, the case began only recently, and the court has not yet expended substantial resources tending to this matter. Under the circumstances, the court is satisfied that declining to exercise supplemental jurisdiction will not harm the parties. Therefore, the court remands Rose's state-law claims to Hennepin County District Court.

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that the motion to dismiss [ECF No. 9] is granted in part as follows:

1. The claim under the federal securities laws (Count 2) is dismissed with prejudice; and

2. The remaining claims (Counts 1, 3, and 4) are remanded to Hennepin County District Court.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: February 25, 2020

s/David S. Doty
David S. Doty, Judge
United States District Court
